**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT GILLARD**, | ) | |
| | ) | Case No. 25-cv-00914 |
| Plaintiff, on behalf of himself and others | ) | |
| similarly situated, | ) | Hon. John J. Tharp. Jr. |
| | ) | |
| v. | ) | **CLASS ACTION COMPLAINT** |
| | ) | |
| **AMAZON.COM SERVICES, LLC**, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Robert Gillard ("Plaintiff" or "Mr. Gillard"), by his undersigned attorneys, complains against Defendant Amazon.com Services, LLC ("Amazon"), individually and on behalf of himself and others similarly situated, for violations of the Americans with Disabilities Act (42 U.S.C. § 12101 *et seq.*, ("ADA")), Illinois Workers' Compensation Act (820 ILCS 305/1 *et seq.*) and similar laws in other states, and unjust enrichment pursuant to Federal Rule of Civil Procedure ("Rule") 23.

**NATURE OF THE ACTION**

1.      This class action lawsuit is brought pursuant to Rule 23 against Defendant Amazon.com Services, LLC for violating the ADA, Illinois Workers' Compensation Act and similar statutes in other states, and common law claims of retaliatory discharge with its no-fault points-based attendance policy and practices.

2.      Amazon has an attendance and time off policy and practice that assesses points against its employees for absences during approved leaves, including those which are statutorily

1

protected under state and federal law, and subsequently takes adverse employment actions against employees, including termination, as a result of the points assessed during their approved leaves.

3. Plaintiff was injured at work on January 31, 2023, notified Amazon of his injury, and elected to pursue workers' compensation benefits under Amazon's policy.

4. Plaintiff applied and was approved for workers' compensation benefits.

5. Plaintiff was approved by Amazon under its policies for a medical leave.

6. Plaintiff returned from his approved medical leave with a negative attendance point balance and was almost immediately terminated.

7. Whether Amazon is aware of its discriminatory and retaliatory conduct is no question – it has been sued for this same conduct and violation repeatedly across the nation.

8. Nevertheless, Amazon willfully maintains this policy, pattern, and/or practice of discriminating and retaliating against employees who took approved leaves because, on information and belief, the cost of litigating these claims is less than the cost of creating and maintaining a compliant attendance and leave system for the hundreds of thousands of people it employs across the nation.

9. Amazon continues to engage in this conduct despite the extreme burden placed on its temporarily and permanently disabled employees and other individuals on approved leaves, including our active service members and those grieving the loss of loved ones.

## **PARTIES**

10. Plaintiff Robert Gillard is a citizen of the State of Illinois and resident of Cook County.

11. Plaintiff worked for Amazon at its Monee, Will County, Illinois facility from May 2021 through June 2024.

12. Defendant Amazon.com Services, LLC is a Washington Limited Liability Company registered to do business in the State of Illinois.

13. At all relevant times, Amazon was and is an employer as defined by the ADA.

14. At all relevant times, Plaintiff was an employee of Amazon as defined by the ADA.

## JURISDICTION

15. The Court has federal question jurisdiction over this case through Plaintiff's claims under 42 U.S.C. § 12101 *et seq.* pursuant to 28 U.S.C. § 1331.

16. The Court has supplemental jurisdiction over Plaintiff's other claims pursuant to 28 U.S.C. § 1367.

17. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because all of the events giving rise to Plaintiff's claims, namely, Amazon's employment and termination of Plaintiff, occurred in this judicial District and Defendant has a principal place of business in this judicial District, in Monee, Illinois.

18. Plaintiff exhausted his administrative remedies and his Right to Sue letter issued by the Equal Employment Opportunity Commission is attached hereto as Exhibit A.

## FACTS COMMON TO ALL COUNTS

### Amazon's Point-Based No-Fault Attendance Policy

19. Amazon provides its employees with an allotment of paid time off ("PTO") and unpaid time off ("UPT"), which acts as a point-based attendance policy whereby employees are issued points to utilize for time away or missed throughout the year.

20. Pursuant to Amazon's policy, employees utilize UPT attendance points for absences, including arriving to work early or late.

21. Amazon employees are "charged" UPT attendance points for absences during internally approved medical, military, pregnancy, domestic violence, jury, voting, and other leaves.

22. If an Amazon employee utilizes more UPT than they have available to them, their UPT balance will be negative and deemed "US Unpaid Time Overdraft."

23. Amazon will automatically use an employee's PTO to cover negative UPT balances.

24. If no PTO or other time is available to cover the negative UPT balance, Amazon takes adverse employment actions against its employees, including termination.

25. Amazon's policies are a sham, developed to induce its employees to self-identify disabilities, rob their employees of paid time off, and retain for their own benefit any funds that would be expended on the continued employment of their leave taking employees, to the detriment of those employees.

26. While Amazon claims in its policies that it does not deduct UPT points when absences are covered by paid time off, an Amazon leave of absence policy, or a leave otherwise protected under the law, this is not the case in practice.

27. Amazon imposed its UPT and other leave and attendance-related policies with an eye toward providing competitive benefits and attracting talent away from its competitors.

28. Amazon never bothered, however, to implement a mechanism to enforce its UPT policy in accordance with leave protections found in their own policies, as well as state, federal, and local laws.

4

29. A majority of Amazon's UPT benefit is managed by an automated electronic point system which automatically deducts and adds points and takes adverse employment actions (*e.g.* terminations, suspensions, etc.) based on triggers and actions built into it.

30. Amazon's existing system does not allow for human override for leaves protected by its policies or state and federal law.

31. As a result, Amazon employees return from Amazon approved leaves, such as a medical leave, like Plaintiff, with negative or very low UPT balances.

32. Upon returning from prolonged stints of approved leave—and, in the case of Plaintiff, even when they come off of protected leave and return to Defendant's regular payroll— the employees suffer a loss of UPT, and other adverse employment actions, including terminations in many instances.

33. Individuals who use protected leave are not in a position where they can choose whether or not to take a leave of absence.

34. Whether due to medical disability, family crises, bereavement, military duty, or otherwise, those employees are guaranteed protected time off for each relevant and applicable reason the legislature chose to provide.

35. Despite those protections, Amazon limits their time away from work to its universal cap applied to every employee's ability to take UPT, regardless of its own policies or the employee's federal or state protections.

36. To make matters worse, Amazon also reduces the amount of UPT that protected employees are allowed to utilize, reducing it day-for-day for the approved leave utilized by such employees.

37. While Amazon's leave policies include the ability to appeal, Amazon has not created or implemented either a functional leave or appeal system – instead, it implemented a system which is mostly managed by artificial intelligence or some other form of decision-making software with minimal oversight by humans.

38. Even when appealed, as was the case for Plaintiff, Defendants' human employees do not have the ability to override the system when it improperly adds points while a person is on an approved leave.

39. The result is that Amazon has created a secondary class of employees universally consisting of those who take leave.

40. As a result of Amazon's policies and practices, these employees receive less UPT than the rest of its workforce simply because they rightfully utilize their other leaves, including legally protected leave.

41. Ultimately, Amazon does not stop at misappropriating unpaid time off - once Amazon realizes the employee has a negative or very low UPT balance, the employee is written up, placed on probation, terminated, or a combination of the three.

**Amazon Knows its Policies Discriminate Against Protected Employees**

42. Amazon is aware of the impact that its leave policies are having on the most vulnerable of its employees.

43. The destructive fallout Amazon's volatile "no fault" attendance policies have had on its employees has been reported across multiple media outlets and jurisdictions.[1]

---

[1] *See Walmart, Amazon Facing Legal Trouble Over Using a Points System to Track and Fire Employees Over Absences; Lawyers*, https://www.businessinsider.com/walmart-amazon-lawsuits-employee-attendance-tracking-points-system-policy-2024-2 (last visited Jan. 25, 2025); *Amazon Workers Advance Leave Interference, Reprisal Class Suit*, https://news.bloomberglaw.com/litigation/amazon-workers-advance-leave-interference-reprisal-class-suit (last visited Jan. 25, 2025); *Amazon's unpaid time off practices violate USERRA, class action suit claims*, https://www.hrdive.com/news/amazons-unpaid-time-off-practices-violate-userra-class-action-suit-claims/623793/ (last visited Jan. 25, 2025).

44. Amazon's conduct has also been raised by members of the United States' Senate and House of Representatives in correspondence to the Department of Labor.[2]

45. As such, Amazon knows, or has reason to know, that its policies unduly target those that take approved and often protected forms of leave, regardless of the purpose or reason for such leave.

46. Despite having knowledge that its point accrual system results in negative employment actions taken against employees utilizing approved and protected medical and other leaves, Amazon continues to rely on the system and assess points against its employees for their protected absences.

47. Amazon was placed on notice of Plaintiff's grievance and the allegations herein at least by June 2024.

48. On information and belief, Amazon has not changed its policies and continues to openly and unabashedly discriminate against individuals with disabilities and others protected under the law.

## FACTS SPECIFIC TO PLAINTIFF GILLARD

49. Amazon hired Plaintiff in or about August 2022 as a seasonal Warehouse Associate.

50. Plaintiff remained a temporary worker through November 2022.

51. Plaintiff was promoted in November 2022 to a full-time Fulfillment Associate.

52. On January 31, 2023, Plaintiff injured his back as a result of lifting heavy boxes at work.

---

[2] *See Letter from Sen. Elizabeth Warren, et al., to Sec. Labor and Chair of the EEOC*, available at https://www.warren.senate.gov/imo/media/doc/2022.03.03%20Letter%20to%20DOL%20and%20EEOC%20re%20 Amazon%20Attendace%20Points%20Policy.pdf.; *Amazon Time-off Policy Federal Probe Sought by Warren, Sanders*, https://news.bloomberglaw.com/daily-labor-report/amazon-time-off-policy-federal-probe-sought-by-warren-sanders (last visited Jan. 25, 2025).

53. Plaintiff was diagnosed with disc protrusions and bulges, and other back and spine-related tears, strains, and other ailments, and underwent ongoing physical therapy to assist with his recovery.

54. Plaintiff's workplace injury impacted his daily life insofar as it frequently rendered him bedridden, and made it difficult for him to lift, move, walk, sit, and perform other activities of daily living.

55. As a result, Plaintiff was approved for leave under Amazon's policies beginning on February 1, 2023.

56. Plaintiff had a positive UPT balance upon beginning his leave.

57. Plaintiff remained on such approved leave through his return to work in May 2024.

58. Plaintiff had a negative balance upon his return from leave.

59. Plaintiff received notification from Amazon on June 5, 2024, a few days after he returned to work, noting that he was terminated effective immediately because his UPT balance was -47 points.

60. Plaintiff's points were accrued while he was on approved and protected medical leave.

61. Plaintiff provided all documentation requested by Amazon and its agents pertaining to Plaintiff's leave.

62. Amazon and its agents oftentimes sent conflicting and confusing communications, many of which included deadlines that had passed and did not make any logical sense.

63. Plaintiff appealed his termination on June 7, 2024, in accordance with Amazon's policies.

64. During Plaintiff's appeal hearing, the Amazon appeal representative informed Plaintiff that they would "look into his concerns" and get back to him.

65. The Amazon representative also informed Plaintiff that the system was "automatic" in terms of UPT point assessment and that they could not override the final determination.

66. Amazon informed Plaintiff on June 14, 2024 that Amazon's policy was "applied properly and consistently" and that Plaintiff's appeal was denied.

67. Amazon provided no justification for its decision, despite Plaintiff making multiple requests.

68. Plaintiff received another e-mail from Amazon on June 23, 2024, noting that his leave "ends on May 26, 2024" and that he should return to work on May 27, 2024.

### Class Allegations

69. Plaintiff brings the claims set forth herein alleging violations of the ADA, unlawful retaliation, and unjust enrichment as a Rule 23(b)(3) class action, as applicable, on behalf of himself and the proposed Classes, consisting of:

**UPT Class**
Defendant's employees who accrued UPT points during leave granted or protected pursuant to federal, state, or local law.

**ADA Sub-Class**
Defendant's employees who accrued UPT points during a medical leave.

**Retaliatory Discharge Sub-Class**
Defendant's employees who accrued UPT points during leave granted or protected pursuant to federal, state, or local law and were terminated as a result of their negative UPT balance.

**Multi-State Workers' Compensation Retaliation Class**
All of Defendant's employees who made a claim for workers' compensation benefits and were terminated as a result of UPT points accrued during leave associated with a workplace injury.

**Illinois Workers' Compensation Act ("IWCA") Retaliation Sub-Class**
Defendant's employees who made a claim for workers' compensation benefits and were terminated as result of UPT points accrued during leave associated with the workplace injury.

70.     Excluded from the Classes are: (1) Defendants; (2) Defendants' officers and directors, those persons' immediate families, and the successors and predecessors of any such excluded person or entity; (3) any Judge or Magistrate Judge presiding over this action, their staff, and the members of their family; (4) persons who properly and timely request exclusion; (5) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (6) Defendant's employees who accrued points while on approved leave pursuant to the Family Medical Leave Act; and (7) Plaintiff's counsel and Defendants' counsel, and their experts and consultants.

71.     The classes defined herein satisfies the requirements of Rule 23.

72.     **Numerosity**. The members of the classes are so numerous that joinder of all members is impracticable, particularly given the high turnover rate in the logistics industry, generally, and, specifically, during the course of and in the years immediately following the Covid-19 Pandemic.

73.     In addition, Plaintiff believes, based on publicly available information, that the class includes at least thousands of members per year, particularly given that Amazon is one of the largest employers in the country.

74.     These individuals are readily identifiable through records that Defendants have an obligation to maintain under the law.

75.     **Commonality and Predominance**. Common questions of law and fact predominate over individual issues affecting only individual class members. The common questions of law and fact include, among others:

10

- Whether Defendant's attendance policy retaliates against employees for taking approved and protected leaves;

- Whether Defendant's attendance policy and practices has a disparate impact on employees with disabilities;

- Whether Defendant has a pattern and practice of discriminating and retaliating against employees with disabilities;

- Whether Defendant was aware of and committed to its pattern and practice of discriminating and retaliating against employees with disabilities because the cost of litigating these claims is less than the cost of creating and maintaining a compliant leave system;

- Whether Plaintiff and others similarly situated are entitled to damages and the extent of such damages;

- Whether, as a result of its conduct, Defendant is unfairly retaining a benefit, to the detriment of Plaintiff and the Class; and

- The extent of punitive damages necessary to force Amazon to impose appropriate leave and attendance policies and practices.

76. **Typicality**. Plaintiff's class claims are typical of the claims of all Members of the Classes insofar as all are subject to the same policies and consistent practices as noted, among other ways.

77. Plaintiff's interests in obtaining monetary relief for Defendant's violations of the Members of the Classes' rights are consistent with, and are not antagonistic to, those of any person within the Classes.

78. **Adequacy of Representation.** Plaintiff will fairly and adequately protect the interests of all Class Members. Plaintiff is a member of the Classes and was personally impacted by the alleged violations. Plaintiff understands the obligations inherent in representing a putative class and the sensitive nature of the interests at issue. Plaintiff has retained counsel competent and experienced in complex and class action litigation.

79. **Superiority**. A class action is a superior mechanism for the efficient and fair adjudication of the controversy alleged herein. Treatment on a class basis will allow a large number of similarly situated individuals to prosecute their modest claims in a single forum simultaneously

and without the unnecessary duplication of cost, expense, and time that would be required by individual actions.

80.     It is unlikely that the Court would encounter any impediments to maintaining Plaintiff's claims on a class basis and no superior alternative exists.

81.     Plaintiff does not seek any category of relief greater than or different from the relief sought for the Classes of which Plaintiff is a member.

82.     This action, if successful, will enforce an important right affecting the public interest nationally and would confer a significant benefit, whether pecuniary or non-pecuniary, on a large class of persons.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of the ADA (42 U.S.C. § 12101 *et seq.*)
### On behalf of Plaintiff and the ADA Sub-Class
### (Disparate Treatment)

83.     Plaintiff incorporates the allegations in the foregoing Paragraphs as if fully stated herein.

84.     Section 12112(a) of the ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

85.     Amazon maintains a pattern and practice of discriminating against qualified individuals on the basis of disability in regard to their job advancement, discharge, compensation, and other terms, conditions, and privileges of employment, in violation of the ADA.

86.     Plaintiff and the ADA Sub-Class Members were qualified, approved for, and took medical leave while they worked for Amazon.

12

87. The terms and conditions of Amazon's medical leave approval process and requirements are such that those who qualify for a medical leave for their own care are disabled as defined by the ADA.

88. Plaintiff and the ADA Sub-Class Members are qualified individuals with disabilities within the meaning of the ADA and part of a statutorily protected class.

89. Plaintiff was injured at work, including bulging discs and back and neck tears, sprains, and other ailments, which prevented him from performing various major life activities, such as lifting, standing, and walking.

90. Plaintiff was a Fulfillment Associate, with responsibilities including receiving, storing, picking, packing, and shipping products, oftentimes using technology like scanners and computers.

91. Plaintiff and the ADA Sub-Class Members could perform the essential functions of their positions with or without reasonable accommodation, as indicated by Plaintiff's return to work and actual work performed.

92. Likewise, the ADA Sub-Class Members returned after an approved leave and, therefore, had been able to perform the essential functions of their position with or without reasonable accommodation.

93. Defendant discriminated against Plaintiff and Class Members when Defendant attributed points to them during protected leaves.

94. Defendant assessed Plaintiff points while on an approved medical leave.

95. Defendant took further action against Plaintiff and the Members of the ADA Sub-Class, subsequently terminating, demoting, or otherwise taking an adverse employment action against them as a result of the attendance points accrued during their approved leaves.

96.    Defendant has a pattern and practice of allotting UPT attendance points to its employees for medical absences and then subjecting them to terminations and other adverse employment actions, in violation of the ADA.

97.    Defendant's pattern and practice is also discriminatory even if it does not lead to terminations, insofar as it could prevent advancements internally, among other harms.

98.    Accordingly, Plaintiff asks the Court to enter judgment finding in Plaintiff and the ADA Sub-Class favor against Defendant and issue an order awarding compensatory damages, emotional distress damages, punitive damages, attorneys' fees and costs, and such other relief as the Court deems just, proper, or equitable.

**COUNT II**
**Violation of the ADA (42 U.S.C. § 12101 *et seq.*)**
**On behalf of Plaintiff and the ADA Sub-class**
**(Retaliation)**

99.    Plaintiff incorporates the allegations in the foregoing Paragraphs as if fully stated herein.

100.    Defendant maintains a pattern and practice of coercing, intimidating, threatening, interfering, and/or retaliating against Plaintiff and ADA Sub-Class Members for having exercised and enjoyed the rights granted to them under the ADA.

101.    Plaintiff and ADA Sub-Class Members applied and were approved for medical leave by Amazon pursuant to Amazon's own workplace policies.

102.    Plaintiff and ADA Sub-Class Members were assessed UPT points for absences during their approved medical leaves.

103.    These points were assessed due to the leave being taken.

104. Upon return from their leaves, Plaintiff and Members of the ADA Sub-Class were terminated or suffered other adverse employment actions as a result of the UPT points assessed against them during their approved medical leaves.

105. Defendant's retaliated against qualified individuals with disabilities by assessing UPT points for taking an approved and protected medical leave.

106. Defendant's conduct has a chilling effect on the workplace rights of disabled individuals.

107. Accordingly, Plaintiff asks the Court to enter judgment finding in Plaintiff's favor against Defendant and issue an order awarding compensatory damages, emotional distress damages, punitive damages, attorneys' fees and costs, and such other relief as the Court deems just, proper, or equitable.

**COUNT III**
**Violation of the ADA (42 U.S.C. § 12101 *et seq.*)**
**On behalf of Plaintiff and the ADA Sub-class**
**(Disparate Impact)**

108. Plaintiff incorporates the allegations in the foregoing Paragraphs as if fully stated herein.

109. Defendant maintains a policy of imposing UPT points on its employees during approved medical absences.

110. While the policy appears neutral on its face, it has a disparate impact on Plaintiff and other qualified individuals with disabilities, including Members of the ADA Sub-Class, by assessing points against them during approved medical absences.

111. Defendant took further action against Plaintiff and Members of the ADA Sub-Class by subsequently taking adverse employment action against them as a result of the points assessed against them during such approved medical absences.

112. Defendant regularly and knowingly terminates, demotes, fails to promote, and takes other adverse employment actions against qualified individuals with disabilities as a result of taking protected medical leave.

113. Accordingly, Plaintiff asks the Court to enter judgment finding in Plaintiff and the ADA Sub-Class' favor against Defendant and issue an order awarding compensatory damages, emotional distress damages, punitive damages, attorneys' fees and costs, and such other relief as the Court deems just, proper, or equitable.

## COUNT IV
### Retaliatory Discharge
### on behalf of Plaintiff and the Retaliatory Discharge Class

114. Plaintiff incorporates the foregoing allegations in Paragraphs as if fully stated herein.

115. Plaintiff and the Retaliatory Discharge Class Members were at-will employees for Defendant.

116. The State of Illinois and all other states have strong public policy in favor of protecting workers' right to benefits when injured on the job. Indeed, all 50 states have a workers' compensation law on their books.

117. The State of Illinois and other states also have a strong public policy against retaliating against employees for taking statutorily protected leaves.

118. Plaintiff and the Retaliatory Discharge Class Members were assessed UPT points as a result of utilizing leave protected by federal, state, or local law and asserting claims pursuant to the Illinois Workers' Compensation Act.

119. As a result of their UPT point balances, Plaintiff and Retaliatory Discharge Class Members were terminated.

120. Plaintiff and Retaliatory Discharge Class Members' terminations were in retaliation for taking protected leave and/or making a workers' compensation claim.

121. Plaintiff and Retaliatory Discharge Class Members were entitled to take the protected leave and make a workers' compensation claim under the law.

122. Accordingly, Plaintiff asks the Court to enter judgment finding in Plaintiff and the Retaliatory Discharge Class' favor against Defendant and issue an order awarding compensatory damages, emotional distress damages, punitive damages, attorneys' fees and costs, and such other relief as the Court deems just, proper, or equitable.

## COUNT V
### Retaliation in Violation of Illinois Workers' Compensation Act
### on behalf of Plaintiff and the IWCA Retaliation Sub-Class

123. Plaintiff incorporates the foregoing allegations in Paragraphs as if fully stated herein.

124. Plaintiff and IWCA Retaliation Class Members were employed by Defendant at the time of their injuries.

125. Plaintiff was employed by Defendant at the time of his injury on January 31, 2023.

126. Plaintiff and IWCA Retaliation Class Members exercised their rights granted by the Illinois Workers' Compensation Act.

127. On February 1, 2023, Plaintiff made a claim pursuant to Defendants' workers' compensation insurance plan.

128. Plaintiff and IWCA Retaliation Class Members were approved under Defendant's plan.

129. Plaintiff and IWCA Retaliation Class Members eventually returned to work following time away.

130.    Plaintiff returned in May 2024.

131.    Plaintiff and IWCA Retaliation Class Members were assessed UPT points for absences taken in connection with a workers' compensation claim.

132.    As a result of their UPT point balances, Defendants terminated Plaintiff and the IWCA Retaliation Class Members.

133.    Accordingly, Plaintiff asks the Court to enter judgment finding in Plaintiff and the Classes' favor against Defendant and issue an order awarding compensatory damages, emotional distress damages, punitive damages, attorneys' fees and costs, and such other relief as the Court deems just, proper, or equitable.

**COUNT VI**
**Retaliation in Violation of Workers' Compensation Acts**
**on behalf of Plaintiff and the Multi-State Workers' Compensation Class**

134.    Plaintiff incorporates the foregoing allegations in Paragraphs as if fully stated herein.

135.    Plaintiff brings this count on behalf of himself and the Workers' Compensation Multi-State Class for violations of Illinois Workers' Compensation laws and those of states that are materially similar to the laws of Illinois.

136.    The Illinois statute is materially similar to the laws of other states insofar as they prohibit retaliation against employees for filing a workers' compensation claim.

137.    The public policy of these states is also materially similar, insofar as, for the protection of employees, each state prohibits retaliation and discrimination against employees who are injured on the job.

138.    Plaintiff and other members of the Workers' Compensation Multi-State Class exercised their rights to workers' compensation and were uniformly and summarily retaliated

18

against when Amazon assessed points against them and/or terminated them thereafter as a result of exercising those rights.

139. Defendant's systems brandish this retaliatory conduct against anyone who claims workers' compensation and utilizes medical leave related thereto.

140. As alleged in detail herein, Defendants' conduct constitutes unlawful retaliation and retribution against Plaintiff and other members of the Workers' Compensation Multi-State Class, in violation of the workers' compensation laws of Illinois and the other states.

141. Accordingly, Plaintiff asks the Court to enter judgment finding in Plaintiff and the Classes' favor against Defendant and issue an order awarding compensatory damages, emotional distress damages, punitive damages, attorneys' fees and costs, and such other relief as the Court deems just, proper, or equitable.

## COUNT VII
### Unjust Enrichment
### on behalf of Plaintiff and the UPT Class

142. Plaintiff incorporates the foregoing allegations in Paragraphs as if fully stated herein.

143. By assessing points against Plaintiff and the Classes while they were on protected leaves, Defendant was unjustly enriched by limiting its potential exposure to additional unpaid or disability-related time off, and retaining the capital required to ensure compliance with employment and other laws, while pushing the expenses associated with such employees off onto insurers until Defendant was prepared to terminate their employment.

144. Defendant's unjust enrichment occurred to the detriment of Plaintiff and members of the Attendance Point Classes.

19

145. The benefit retained by Defendants is far greater than the amount of remuneration or other overhead they were able to avoid by assessing UPT points against employees during protected leave.

146. In particular, the system would weed out those employees who regularly, or even sporadically, were required to rely on protected leave.

147. Defendant experienced the benefit of masking this self-executing discriminatory mechanism for terminating employees who used protected leave behind the guise of a system purported to be impartial and fair.

148. However, the system was anything but. Instead, Amazon's points system discriminated against each employee who took protected leave and were subject to the policy.

149. As a result of the conduct Defendant undertook to experience this benefit, Plaintiff and other Members of the Classes suffered and sustained a loss of their available unpaid time off, as well as the accrual of internally tracked demerits that could have catastrophic consequences for them, limiting their ability to utilize future leave as well as their status as an employee.

150. Defendants have thus been unjustly enriched by at least the amount that each unpaid day off assessed against Plaintiff and each member of the Classes would have cost Defendant, had Plaintiff and the Classes been able to utilize them.

151. Defendants' retention of these monetary benefits violates fundamental principles of justice, equity, and good conscience.

152. Plaintiff and the other members of the Classes are entitled to restitution in the amount by which Defendants have been unjustly enriched to Plaintiff and the members of the Classes' detriment, and an order requiring Defendants to disgorge any additional monies or other benefit they have retained as a result of their unjust and unlawful conduct.

## PRAYER FOR RELIEF

Plaintiff asks the Court to enter judgment finding in Plaintiff's favor against Defendants and issue an order:

a. Certifying the Classes pursuant to Rules 23(b) and (c);

b. Appointing Plaintiff Robert Gillard as Representative of the Classes and the undersigned as Class Counsel;

c. Declaring that the actions complained of herein violate the ADA (42 U.S.C. § 12101 *et seq.*) in effect at the time of violation;

d. Awarding declaratory relief;

e. Awarding compensatory damages and other actual damages;

f. Awarding emotional distress damages;

g. Awarding punitive damages commiserate with the egregiousness of Defendant's knowing, willful, and/or reckless conduct;

h. Awarding reasonable attorneys' fees and costs of this action; and

i. Awarding such other relief as the Court deems just, proper, and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues as to which a jury trial is available.

Dated: May 20, 2025

Respectfully submitted,

**ROBERT GILLARD, on behalf of himself and others similarly situated**

By:  /s/ *Laura Luisi*

Laura Luisi
Jamie Holz
**LUISI HOLZ LAW**
LuisiL@luisiholzlaw.com
77 W. Wacker Dr., Suite 4500
Chicago, Illinois 60601
Tel: (312) 639-4478

*Attorneys for Plaintiff and Putative Classes*

21

## <u>CERTIFICATE OF SERVICE</u>

I, an attorney, hereby certify that on May 20, 2025, I filed the foregoing First Amended

Complaint, which was served upon counsel of record via the Court's ECF notice system.

/s/      *Laura Luisi*
Laura Luisi
Jamie Holz
**LUISI HOLZ LAW**
LuisiL@luisiholzlaw.com
77 W. Wacker Dr., Suite 4500
Chicago, Illinois 60601
Tel: (312) 639-4478