IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **ROBERT GILLARD**, on behalf of himself and others similarly situated, <br><br>      Plaintiff, <br><br>    v. <br><br>**AMAZON.COM SERVICES, LLC**, <br><br>      Defendant. | Case No.: 1:25-cv-00914 <br><br> Judge John J. Tharp Jr. |

**PLAINTIFF'S RESPONSE
IN OPPOSITION TO DEFENDANT AMAZON'S MOTION TO DISMISS**

Plaintiff Robert Gillard ("Plaintiff"), by his undersigned attorneys, hereby submits his Response

to Defendant Amazon.com Services, LLC ("Amazon" or "Defendant") Motion to Dismiss (Dkts. 27-28)

Plaintiff's First Amended Complaint (the "Complaint") pursuant to Federal Rule of Civil Procedure

("FRCP") 12(b)(1) and (6), and in support states as follows:

**INTRODUCTION AND FACTUAL BACKGROUND**

Amazon's Motion to Dismiss should be denied in its entirety. The Complaint alleges Amazon

maintains a no-fault point-based attendance policy for unpaid time off ("UPT"), which it enforces without

exception as to absences related to disability or any other protected leave. Dkt. 21, ¶¶ 19-41. Points

accumulate and lead to adverse employment actions, including termination. *Id.* at ¶ 32. While Amazon's

written policy claims Amazon does not assess UPT points for protected leaves, the written policy is a

sham – the truth is that Amazon has not made the investment required to appropriately build and operate

its internal leave and accommodation functions in accordance with its written policy or with exceptions

required under the law for employees on protected leave. *Id.* at ¶ 25. As to Plaintiff's termination, he

1

went on medical leave due to a work-related injury with a positive UPT balance, lost UPT points due to that medical leave, returned to work to a negative balance, and was quickly terminated. *Id.* at ¶¶ 56-60.

The only argument Amazon made pertaining to the pleadings relate to causation, but Plaintiff's Complaint adequately pleads causation in accordance with precedent in this Circuit. The remainder of Amazon's arguments in its moving papers are of a legal nature and inappropriate for adjudication at the pleading stage. While Amazon sought leave to file an oversized brief of a staggering 22 pages, its moving papers are largely repetitive, boilerplate legal arguments which address the merits and are devoid of any assessment of the factual allegations in the Complaint. Absent a good faith basis for many of its arguments and adequate development of those arguments, Amazon's Motion appears to be nothing more than an effort to delay proceedings.

As alleged in Plaintiff's Complaint, Amazon's attendance policy has not only garnered various lawsuits, but also caught the attention of politicians and advocacy groups alike, which have spoken out against Amazon's harmful practices. *See* Dkt. 21, ¶ 41-44, fns. 1 and 2. Plaintiff further alleges in his Complaint that "Amazon is aware of the impact that its leave policies are having on the most vulnerable of its employees" and that the impact on its employees has been reported in multiple media outlets and claims filed in multiple jurisdictions. *See* Dkt. 21, ¶¶ 41-43, fn. 1. There are at least four recent lawsuits pertaining to Amazon's attendance policy and practices:

*Mangar v. Amazon.com Services, LLC*, **24-cv-0188, D. New Jersey:** Class claim for interference with rights and retaliation in violation of the Family and Medical Leave Action ("FMLA") due to plaintiffs being out on medical leave, being assessed attendance infractions while on leave pursuant to Amazon's policy and practices, and being terminated as a result of the infractions assessed during approved medical leave.

*Mahone et al., v. Amazon.com, Inc.,* **22-594 MJP, W.D. Washington:** Class claims for discrimination and retaliation in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA") due to plaintiffs accruing attendance infractions while on approved and protected military leave and being terminated as a result of the infractions.

*Turner v. Amazon.com Services, LLC*, **25-cv-00993, E.D. California:** Individual claim for disparate treatment and impact discrimination in violation of the California Fair Employment and Housing Act ("FEHA") and common law retaliatory discharge, due to plaintiff being out on medical

2

leave, being assessed attendance infractions while on leave pursuant to Amazon's policy and practices, and being terminated as a result of the infractions assessed during approved medical leave.

*Caputo v. Amazon.com Services, LLC*¸ **23-cv-01346, E.D. California**: Individual claims for disparate treatment and retaliation in violation of FEHA, among other claims, due to plaintiff being out on medical leave resulting from a workplace injury, being assessed attendance infractions while on leave pursuant to Amazon's policy and practices, and being terminated as a result of the infractions.[1]

Advocacy groups and politicians have also taken notice of Amazon's illegal practices. As cited in the Complaint, in 2022, A Better Balance, a national not-for-profit entity dedicated to promoting fair and supportive workplace policies, wrote to Amazon urging it to change its point-based attendance policies and practices. A Better Balance referred to Amazon's point-based attendance policy as "draconian" and that many Amazon workers reported that they were punished for taking leave. Dkt. 21, ¶¶ 43-44.[2]

A few months later, on March 3, 2022, Senators Bernie Sanders, Elizabeth Warren, Cory Booker and Richard Blumenthal and Congress Members Alexandria Ocasio-Cortez and Cori Bush wrote to the Secretary of Labor and Chair of the Equal Employment Opportunity Commission to share their concerns regarding Amazon's point-based attendance policy and practices, which they stated "appears to penalize workers for taking legally protected leave by allocating points to an employee's record for each absence, regardless of the reason." Dkt. 21, ¶ 44.[3] The Congress Members concluded that Amazon's attendance policy and practices work to "discourage workers from taking the leave to which they are entitled and punish them for doing so, contributing to a culture of exploitation and fear." *Id.* For these reasons and

---

[1] Another theme permeating the nearly identical matters against Amazon is Amazon's failure to communicate with employees regarding the reason for a termination or denial of a benefit, or failure to communicate at all. Amazon's internal communication systems with its rank-and-file employees is woefully deficient, particularly to meet Amazon's obligations under the law. As one of the largest employers in the nation, Amazon should be capable of utilizing software, AI, and other systems to effectively communicate with its employees, including with respect to leaves and attendance, let alone termination. The notion that basic communication is "too hard" should be disregarded for what it is – preposterous.

[2] A Better Balance Jan. 10, 2022 Letter, pp, 1-2, https://www.abetterbalance.org/resources/letter-urging-amazon-to-correct-deficiencies-in-abusive-points-based-attendance-policy/ (last visited July 27, 2025).

[3] Mar. 3, 2022 Ltr. to Amazon from Senators Bernie Sanders and Elizabeth Warren, p. 1, www.warren.senate.gov/imo/media/doc/2022.03.03%20Letter%20to%20DOL%20and%20 EEOC%20re%20Amazon%20Attendace%20Points%20Policy.pdf (last visited July 27, 2025).

those further discussed below, Plaintiff respectfully requests that the Court deny Amazon's Motion to Dismiss in its entirety and permit the parties to proceed to discovery.

## LEGAL ARGUMENT

### A. Plaintiff Sufficiently Alleged Facts Establishing Causation to Support ADA Disparate Treatment and Retaliation Claims (Counts I-II).

#### 1. Plaintiff's Complaint sufficiently alleges causation to support his ADA disparate treatment claim (Count I).

Plaintiff adequately pled causation to support ADA disparate treatment. The Seventh Circuit emphasized that a party must only plead sufficient facts in such a claim to support an *inference* that the adverse action was taken "on the basis of disability." *Roberts v. City of Chicago*, 817 F.3d 561, 565 (7th Cir. 2016). Proof of discrimination "is not limited to near admissions by an employer that its decisions were based on a proscribed criterion, but 'also includes circumstantial evidence which suggests discrimination through a longer chain of inferences.'" *EEOC v. Am. Flange & Greif, Inc.,* No. 21 C 5552, 2024 U.S. Dist. LEXIS 166267, at *20 (N.D. Ill. Sep. 16, 2024) (quoting *Filar v. Bd. of Educ. of City of Chicago*, 526 F.3d 1054, 1060 n.1 (7th Cir. 2008)). "Circumstantial evidence of causation may include '(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group received better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action.'" *Id.* (citing *Parker v. Brooks Life Sci., Inc.,* 39 F.4th 931, 937 (7th Cir. 2022) (quoting *Rowlands v. U.P.S.-Fort Wayne*, 901 F.3d 792, 801 (7th Cir. 2018))).

Here, Plaintiff alleges that points were assessed against him and others due to having taken, and for days spent on, medical leave. Dkt. 21, ¶¶ 58, 60, 93-95. Plaintiff had a zero UPT balance prior to his leave and returned to work with a negative balance. (*Id.* at ¶¶ 56, 58). Plaintiff further alleges that the "terms and conditions of Amazon's medical leave approval process and requirements are such that those who qualify for a medical leave for their own care are disabled as defined by the ADA." (*Id.* at ¶ 87).

4

Therefore, each class member received points after notifying Amazon of their disability, being deemed disabled, and subsequently taking leave for a disability. The assessment of points alone, independent of being a step in Amazon's scheme of retaliatory conduct, was an adverse employment action. Even if that were not the case, Plaintiff's termination resulting from the points he accrued while on leave was an adverse employment action – Plaintiff would not have been terminated but-for the points and the points would not have accrued but-for Plaintiff's leave. Put plainly, Plaintiff was assessed points for being absent from work for an approved medical leave and was then terminated as a result of those same points.

The cases Amazon cited in support of its arguments to the contrary are inapposite and easily distinguishable, not to mention irrelevant and of little utility to the Court's limited analysis. *See Abdul-Aziz v. Show Dep't, Inc.*, No. 09-cv-7609, 2010 U.S. Dist. LEXIS 89867, at *8 (N.D. Ill. Aug. 25, 2010) (dismissing ADA disparate treatment claim where the complaint did "not allege that [the plaintiff] was terminated *on account* of a disability.") (emphasis added); *Lee v. Chi. Transit Auth.*, No. 12-cv-09180, 2016 U.S. Dist. LEXIS 156967, at *19 (N.D. Ill. Nov. 14, 2016) (dismissing ADA claim where the plaintiff relied on a policy to support the claim but failed to provide any "details regarding the substance of [defendant's] policy or on what basis [plaintiff] might seek to challenge it"); and *Smajlovic v. Ann & Robert H. Lurie Children's Hosp.*, No. 15-cv-01243, 2016 U.S. Dist. LEXIS 86591, at *13 (N.D. Ill. July 5, 2016) (dismissing ADA claim because the plaintiff did not plead *any* facts tying his termination to his disability). It makes no difference that Plaintiff alleged groups other than the disabled may have also been adversely impacted by Amazon's UPT policy and practices – the Class and Sub-Classes at issue encompass all forms of protected leave. *See* Dkt. 21, ¶ 69 (defining Retaliatory Discharge Sub-Class as "Amazon employees who accrued UPT points during leave granted or protected pursuant to federal, state, or local law and were terminated as a result of their negative UPT balance"). Because Plaintiff

5

alleged that he would not have accrued UPT points and as a result been terminated but-for his disability, he adequately alleged causation to support his disparate treatment class claim.

### 2. Plaintiff's Complaint alleges causation to support ADA retaliation (Count II).

Plaintiff undeniably pled facts establishing that his disability and the points accrued during medical leave to address that disability were the reason for his termination. Plaintiff alleges in his Complaint that he went on an approved leave with a positive balance, returned to a negative balance, and was terminated for the points he was assessed during and as a result of his approved medical leave (and which accrued for no other reason). Dkt. 21, ¶¶ 3-6. Again, in reliance on logic, the plain language in the Complaint indicates that Plaintiff was on leave and, as a result of being on medical leave approved by Amazon, Amazon was aware that Plaintiff had requested leave and, despite this Amazon accrued UPT points against Plaintiff's account during that leave. The notion, as Amazon argues, that Plaintiff's ADA retaliation claim must be dismissed because no decisionmaker was identified by name defies logic and common sense.[4] Moreover, the medical leaves taken by Plaintiff and Class Members were taken due to a disability and in order to address a disability. The UPT points, whether they lead to a Class Members' loss of time off or termination, therefore, were assessed directly as a result of Plaintiff and Class Members' disabilities. Were it not for the disability, the need for related leave, and the approval of such leave by Amazon, Plaintiff and Class Members would not be assessed UPT points and terminated. As noted above in further detail above, a singular causal link is not required.

A few short months ago, in December 2024, the United States District Court for the District of New Jersey denied a similar motion to dismiss filed by Amazon, ultimately finding that the plaintiffs there sufficiently alleged causation in a case involving nearly identical factual allegations in support of

---

[4] Reading between the lines of Amazon's various arguments, it appears to have intentionally created an electronic system of points with little human interaction so that it can claim there was no decisionmaker, thereby attempting to create a defense for itself, while it is in the midst of plainly and unabashedly violating the law.

class claims for violation of the Family and Medical Leave Act due to Amazon's same UPT practices in New Jersey. *See* Ex. A, *Mangar et al. v. Amazon.com Services, LLC*, 24-cv-00188-JXN-AME, Dec. 28, 2024 Order. The court in *Mangar* noted that "whether a causal link exists 'must be considered with a careful eye to the specific facts and circumstances encountered. *Id.* at p. 11 (citing *Budhun v. Reading Hosp. & Med. Ctr.,* 765 F.3d 245, 258 (3d Cir. 2014)).

With this in mind, the court ultimately held that plaintiff Mangar adequately pled causation by alleging she reported and Amazon approved her intermittent medical leave on April 12, 2023 and terminated her on April 14, 2023 due to "taking time off." *Id.* at p. 12. The court found that there was "an unusually suggestive temporal proximity" between the medical leave and termination. *Id.* Likewise, the court found that plaintiff Benavides adequately pled causation, as well, by alleging she was approved for leave through October 31, 2023, had until August 31, 2023 to submit documentation, and was terminated on August 20, 2023, before the deadline to submit documents. The court made the same finding regarding the "unusually suggestive temporal proximity" between the request for documentation regarding leave and the termination. *Id.* In terms of causation for retaliation, Plaintiff's allegations are on par with those in *Mangar*, where Plaintiff alleges that the points were assessed during leave, and his termination occurred in the days following return from leave. These allegations are sufficient to assert causation.

### B. Plaintiff Adequately Alleged an ADA Disparate Impact Claim, As Statistical Evidence Is Not a Pleading Prerequisite (Count III).

Amazon misstated the ADA disparate impact claim pleading standard. Applicable pleading standards require that a plaintiff plead that a "particular employment practice causes a disparate impact on a member of a protected class." *Spriesch v. City of Chi.*, No. 17 C 1952, 2017 U.S. Dist. LEXIS 177268, at *14 (N.D. Ill. Oct. 26, 2017). Statistical evidence is not a required form of evidence in ultimate proof, nor is it required as a pleading element. The United States Supreme Court precedent is clear that a plaintiff must "allege facts at the pleading stage *or* produce statistical evidence demonstrating a causal

7

connection." *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.,* 576 U.S. 519, 543 (2015) (emphasis added); *see also Anfeldt v. UPS,* No. 15 C 10401, 2017 U.S. Dist. LEXIS 30150, at *5 (N.D. Ill. Mar. 3, 2017) ("A disparate impact theory of discrimination requires the plaintiff to put forth evidence (*facts **or** statistics*) demonstrating that the challenged employment practice has a disproportionately negative effect upon members of the protected class . . .") (emphases added).

Indeed, Plaintiff did just that in his Complaint, identifying Amazon's policy and practice of deducting points attendance points for protected leaves and taking adverse employment decisions as a result of the UPT points accrued during those leaves. *See* Dkt. 21, ¶¶ 19-41 ("Amazon does not stop at misappropriating unpaid time off – once Amazon realizes the employee has a negative or very low UPT balance, the employee is written up, placed on probation, terminated, or a combination of the three"). Plaintiff went on to describe the following facts and evidence in his Complaint indicative of the disparate impact Amazon's point-based attendance policy has on individuals with disabilities and other protected characteristics, including specific identification of the policy and practice, among others:

> "If an Amazon employee utilizes more UPT than they have available to them, their UPT balance will be negative and deemed 'US Unpaid Time Overdraft.' . . . If no PTO or other time is available to cover the negative UPT balance, Amazon takes adverse employment actions against its employees, including termination." Dkt. 21, ¶¶ 22-24.

> "A majority of Amazon's UPT benefit is managed by an automated electronic point system which automatically deducts and adds points and takes adverse employment actions (e.g. terminations, suspensions, etc.) based on triggers and actions built into it. Amazon's existing system does not allow for human override for leaves protected by its policies or state and federal law. As a result, Amazon employees return from Amazon approved leaves, such as a medical leave, like Plaintiff, with negative or very low UPT balances. Upon returning from prolonged stints of approved leave—and, in the case of Plaintiff, even when they come off of protected leave and return to Defendant's regular payroll—the employees suffer a loss of UPT, and other adverse employment actions, including terminations in many instances." *Id.* at ¶¶ 29-32.

> "Despite those protections, Amazon limits their time away from work to its universal cap applied to every employee's ability to take UPT, regardless of its own policies or the employee's federal or state protections. To make matters worse, Amazon also reduces the amount of UPT that protected employees are allowed to utilize, reducing it day-for-day for the approved leave utilized by such employees." *Id.* at ¶¶ 35-36.

"The result is that Amazon has created a secondary class of employees universally consisting of those who take leave. As a result of Amazon's policies and practices, these employees receive less UPT than the rest of its workforce simply because they rightfully utilize their other leaves, including legally protected leave. Ultimately, Amazon does not stop at misappropriating unpaid time off – once Amazon realizes the employee has a negative or very low UPT balance, the employee is written up, placed on probation, terminated, or a combination of the three." *Id.* at ¶¶ 39-41.

Each of the opinions Amazon points to in support of its "statistical evidence" argument involves procedurally divergent scenarios, including opinions addressing a request for a preliminary injunction (*Swan v. Bd. Of Educ. of Chi.,* No. 13 C 3623, 2013 WL 4401439, at *12 (N.D. Ill. Aug. 15, 2013)), a request for class certification following extensive discovery (*Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 711 (7th Cir. 2012)), dismissal of disparate impact claim where the "plaintiffs' complaint [did] not mention disparate impact," did not allege that defendant had discriminated against disabled applicants generally, and had no dipositive facts pertaining to leave or attendance (*Roberts v. City of Chicago*, 817 F.3d 561, 566 (7th Cir. 2016)), and another denial of summary judgment with no mention of statistical evidence whatsoever (*H.P. v. Naperville Cmty. Unit Sch. Dist. #203*, No. 17 C 5377, 2017 WL 5585627, at *5 (N.D. Ill. Nov. 20, 2017) (also noting that the plaintiff there, unlike here, failed to describe how those with disabilities were impacted by a policy to a greater extent than other students). This case is in the pleading stage and the parties are briefing a motion to dismiss, without the benefit of discovery and the factual and statistical employee data that is entirely in Amazon's possession.

The only other case Amazon pointed to in support of the extraordinary request for relief is *Van Gorp v. Eli Lilly & Co.*, a case from the Southern District of Indiana involving a claim for ADA discrimination filed by plaintiffs who were terminated by their employer for refusing to receive the Covid-19 vaccine. No. 22-cv-01650, 2023 WL 5486052, at *6 (S.D. Ind. Aug. 24, 2023). The complaint in *Van Gorp* was found to be "devoid of any factual content" tending to show that there could be a disparity between disabled and non-disabled employees. That is not the case here, as Plaintiff alleges in his Complaint the aforementioned facts pertaining to the creation of a "secondary class" of employees

who, as a result of Amazon's policies and practices, have fewer available UPT points to use than their non-disabled coworkers, and which, in many cases, results in terminating disabled employees who would drive up Amazon's employee costs. Dkt. 21, ¶ 39. The practice is illegal and particularly unacceptable for the nation's second largest employer. These allegations suffice in alleging a disparate impact claim under *Iqbal* and *Twombly*.

### C. Plaintiff's Common Law Retaliation Claims Are Adequately Pled (Counts IV-VI).

#### 1. Plaintiff adequately pled three causes of action for common law retaliation.

Plaintiff's Counts IV, V, and VI are distinct causes of action and stand apart from Plaintiff's other claims. Amazon's Motion confuses the classes and claims at issue. Plaintiff's claims are brought on behalf of Illinois and national sub-classes tailored to the statute or claim at issue, each of which are ascertainable and will be certified at the appropriate procedural juncture.

Count IV is a national class claim on behalf of Plaintiff and all other Amazon employees for retaliatory discharge in violation of common law public policy for terminating Plaintiff and Class Members as a result of the UPT points assessed during protected leave, such as leave under the Workers' Compensation Act or ADA. Dkt. 21, ¶¶ 114 – 122.

Count V is an Illinois sub-class claim on behalf of Plaintiff and Illinois employees who were terminated due to points accrued resulting from a leave taken due to a workplace injury. Count V asserts that both termination and the assessment of UPT points is a form of retaliation under Illinois law. Whether or not the assessment of attendance infractions (here, UPT points) is a form of common law retaliation under Illinois law may be an issue of first impression.

Finally, Count VI is a national claim on behalf of Plaintiff and all other Amazon employees for retaliatory discharge when they were assessed points due to rights asserted pursuant to the Workers' Compensation Act and terminated due to those points. Dkt. 21, ¶¶ 114 – 122. The premise of Count VI

is that nearly all, if not all, states maintain a public policy against discharging employees for claiming rights pursuant to each respective state's workers' compensation law or similar legislation or rights.

Multi-state classes of this nature are recognized in this Circuit when the laws of the state are substantially similar on the topic at issue. Amazon will have the opportunity to argue why certain states should be excluded. *See Freeman v. MAM USA Corp.*, 528 F. Supp. 3d 849, 859 (N.D. Ill. 2021) (stating "adequacy, commonality, and predominance can be tough questions in deciding whether to certify a multi-state class[,]" but that those were "question[s] to be answered after discovery on the propriety of class certification—not right out of the box."); *Benson v. Newell Brands, Inc.*, No. 19 C 6836, 2021 U.S. Dist. LEXIS 220986, at *35 (N.D. Ill. Nov. 16, 2021) (certifying a multi-state class and sub-class, and noting that even "[i]f it turns out down the road that there is a certain unique statutory feature that requires purchasers in that state to be treated separately, that issue can be handled by creating another subclass.").

### 2. The assessment of UPT points is a form of common law retaliation.

Even when they do not lead to termination, the assessment of UPT points is an adverse employment action in and of itself. As noted by Amazon, Illinois courts have recognized a claim for common law retaliatory discharge, but to date have not expanded the cause of action to include other diminutions in employment. Illinois courts have never ruled on whether the accrual of infractions in a point-based disciplinary system constitutes common law retaliation in violation of public policy, particularly at this moment in history, where single-employer workforces are larger than they have ever been and employers, refusing to accept the cost of complying with the rights of their large workforces, simply forego creating mechanisms which manage compliance.

The cause of action of retaliatory discharge was first recognized by the Illinois Supreme Court in *Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 184 (1978), in acknowledgement that public policy of the State of Illinois is to "ensure rights and remedies to employees who have compensable claims" under the

11

Workers' Compensation Act and otherwise. The Illinois Supreme Court refused to interpret the common law retaliation claim in such a way "which would allow employers to put employees in a position of choosing between their jobs and seeking their remedies under the Act." *Id.* To meet pleading standards in this context, therefore, a plaintiff must allege the following to support common law retaliation: (1) he engaged in a protected activity; (2) his employer took a materially adverse action against him; and (3) a causal nexus existed between the protected activity and adverse action. *See Hinthorn v. Roland's of Bloomington, Inc.*, 119 Ill. 2d 526, 530 (1988).

General retaliation jurisprudence identifies the crux of whether conduct is materially adverse such that it constitutes retaliation is whether it would deter a reasonable employee from engaging in further protected activity. *Robinson v. Perales,* 894 F.3d 818, 830 (7th Cir. 2018) ("The harm is judged by an objective standard but context matters . . .a retaliatory schedule change, for example, may not be significant for some employees but may matter enormously to a parent with young children") (citing, *Burlington N. & Santa Fe Ry. v. White,* 548 U.S. 53, 68, (2006)). "An act that is immaterial in some situations might be material in others." *Id.* Plaintiff's interpretation is aligned with the public policy of the state of Illinois, including as described in the language of Section 4(h) of the Workers' Compensation Act, which is not limited to retaliation in the form of discharge:

> It shall be unlawful for any employer, insurance company or service or adjustment company to interfere with, restrain or coerce an employee in any manner whatsoever in the exercise of the rights or remedies granted to him or her by this Act or ***to discriminate, attempt to discriminate, or threaten to discriminate*** against an employee in any way because of his or her exercise of the rights or remedies granted to him or her by this Act.

> It shall be unlawful for any employer, individually or through any insurance company or service or adjustment company, ***to discharge or to threaten to discharge,*** or ***to refuse to rehire or recall*** to active service in a suitable capacity an employee because of the exercise of his or her rights or remedies granted to him or her by this Act.

820 ILCS 305/4(h). Here, UPT points are a form of retaliation because, among other reasons, the point totals determine whether Plaintiff and other Amazon employees will remain employed and are are

eligible to participate in other terms and conditions of employment. Importantly, the UPT points lead to terminations and oftentimes, as was the case with Plaintiff, Amazon assesses enough points in a singular leave to warrant termination under its policies. In situations like Plaintiff's, where he went on leave with no points and returned to enough of a negative balance to warrant immediate termination, Amazon is hard-pressed to come up with a reason to the contrary.

3. **Plaintiff's retaliatory discharge claim is not preempted by the Illinois Human Rights Act (Count IV).**

Plaintiff's retaliatory discharge claim is not preempted by the Illinois Human Rights Act ("IHRA"). Amazon misapplied the concept of preemption under Section 8-111(D) of the IHRA, which states that "no court of this state shall have jurisdiction over the *subject* of an alleged civil rights violation other than as set forth in this Act." (emphasis added). Preemption under the IHRA is limited to subject matter, as noted in the statutory language. The IHRA, however, "does not call for preemption in the broader sense that all claims *arising out* of an employment relationship are precluded." *Richards v. United States Steel*, 869 F.3d 557, 563 (7th Cir. 2017). The Seventh Circuit has held that "that sort of preemption is sometimes found in federal statutes that block state-law claims relating to, or arising from, an entire category of conduct or an entire category of injury," which is not the case for Section 8-111(D) of the IHRA. *Id.* The Illinois Supreme Court explained the IHRA preemption as follows:

> The adjudication of tort claims has traditionally been within the province of our courts, and we can find nothing in the language of the [IHRA], or the policy underlying it, which indicates that the legislature intended to preclude . . . court[s] from exercising jurisdiction over all tort claims . . .

*Id.* (citing *Maksimovic v. Tsogalis*, 177 Ill.2d 511, 518 (1997). The Illinois Supreme Court boiled down the inquiry of preemption as follows: "whether a court may exercise jurisdiction over a tort claim depends on whether the tort claim is inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Act itself." *Id.* (citing *Maksimovic*, at 177 Ill.2d at 517). In this regard, the key inquiry is not whether the facts which support a common law tort claim also support

13

a claim under the IHRA, "but rather whether the plaintiff can prove the elements of the tort '*independent of any legal duties created by the Illinois Human Rights Act.*'" (citing *Maksimovic*, at 177 Ill.2d at 517). "If a plaintiff can allege facts sufficient to establish elements of a tort, that tort is not preempted" by the IHRA. *Naeem v. McKesson Drug Co.,* 444 F.3d 593, 603 (7th Cir. 2006). In *Richards*, the case primarily relied upon by Amazon in its Motion, the Seventh Circuit held that that the factual overlap between a statutory IHRA claim and common law emotional distress claim "does not matter" and that the plaintiff could pursue the tort claim, so long as she did not rely solely on rights or duties created by the IHRA.

Here, there is an independent basis for Plaintiff's retaliatory discharge claim apart from the IHRA. Plaintiff made a claim pursuant to the Workers' Compensation Act and claims two adverse employment actions: (1) incurring UPT points, which prevent Plaintiff from taking other time off, are adverse employment actions on their own accord, and lead to adverse employment actions including termination; and (2) termination resulting from the UPT points. Plaintiff's retaliatory discharge claim relies on the fact that Plaintiff suffered a workplace injury and incurred attendance infractions as a result of leave due to the workplace injury and Workers' Compensation claim. Dkt. 21, ¶ 118 ("Plaintiff and the Retaliatory Discharge Class Members were assessed UPT points as a result of . . . asserting claims pursuant to the Illinois Workers' Compensation Act"). The UPT points that Plaintiff accrued as a result of his workplace injury caused his termination. *Id.* at ¶ 119. The points assessed were due to a workplace injury and would not have been assessed but-for the workplace injury. These allegations are sufficient to establish a separate cause of action for retaliatory discharge.

> **4. There is a causal connection between Plaintiff's leave and the assessment of UPT points which lead to termination.**

Plaintiff's workplace injury was the catalyst for his leave. Were it not for the workplace injury and the claims made as a result of that injury, Plaintiff would not have had any reason to go on leave, be assessed UPT points, and ultimately be terminated. With regard to Plaintiff's common law retaliation

14

claims, "the ultimate issue to be decided is the employer's motive in discharging the employee." *Clemons v. Mech. Devices Co.*, 235 Ill. Dec. 54, 57 (1998). As discussed, Plaintiff has alleged that Amazon's motives were to retaliate against those who had filed workers' compensation claims or taken related leave in order to limit employee and administrative costs. Dkt. 21, ¶¶ 8, 37, 46, 120,131–132, 138, 139, 143. Despite this Amazon argues that Plaintiff has failed to satisfactorily demonstrate causation for two sparsely supported reasons. First, Amazon parrots a string cite in order to paint timing of Plaintiff's termination as dispositive of his claim. Dkt. 28, p.14. Second, Amazon argues that Plaintiff's allegations that Amazon relies on an automated benefits system precludes retaliatory conduct on its part. *Id*. Neither argument shield Amazon's wrongful conduct here.

Amazon's first argument mischaracterizes the facts at hand. Temporal proximity is a circumstantial fact. *Brooks v. Pactiv Corp.*, 729 F.3d 758, 768 (7th Cir. 2013) ("The lack of temporal proximity between the filing of a workers' compensation claim and the employee's discharge is a circumstantial fact . . ."). Each of Amazon's authorities involves a period of time drastically longer than that at issue here (16 months). Dkt. 21, ¶¶ 59, 127. Amazon's authorities address two-, four-, and five-year gaps between the exercise of those rights and the alleged retaliation at issue. *See* Dkt. 28, p.14. Despite that, even the "passage of eleven years [does] not *necessarily* defeat causation when recent developments demonstrate retaliatory motives." *Emerson v. Dart*, 109 F.4th 936, 942 (7th Cir. 2024) (quoting *Brooks*, 729 F.3d at 768).

As alleged, Plaintiff was terminated only days after returning from work as a result of leave taken due to his workplace injury, presenting Amazon with an opportunity and motive (*e.g.* reducing employee costs) that was freshly renewed with Plaintiff's return to work. Dkt. 21, ¶¶ 55–59. Additionally, Amazon's interpretation of Plaintiff's allegations fails to capture them in full. Plaintiff alleges that the retaliatory conduct at issue *began* with the attribution of UPT points against Plaintiff for utilizing his

Workers' Compensation rights, *not* his ultimate termination. Dkt. 21, ¶¶ 118–120, 131–132, 138–140. The attribution of UPT points occurred immediately, as soon as Plaintiff began using his related medical leave,and, upon reaching a pre-determined number of points, Amazon's systems determined to terminate Plaintiff. As a result of the policies and procedures which are developed into and control Amazon's leave system, its retaliation was delayed until Plaintiff resumed work and was leveled shortly thereafter.

Amazon's second argument is a non-starter. Plaintiff repeatedly alleges that he had reported his injury and workers' compensation claim to Amazon through the appropriate process, and as a result was placed on medical leave, during which the retaliation against him began. Dkt. 21, ¶¶ 52, 55–61, 118–120, 131–132, 138–140. Amazon cannot claim ignorance of Plaintiff's injury or workers' compensation claims when all relevant and required parties, per Amazon's policies, were informed of Plaintiff's exertion of those rights. As such, Amazon's argument here, as elsewhere, fails to shield them from liability for their conduct.

### D. Plaintiff's Unjust Enrichment Claim Is Properly Pled Under Illinois Law.

Plaintiff adequately pled his unjust enrichment claim, which rests on facts independent from his ADA claims. Courts in this District routinely refuse to dismiss unjust enrichment claims where defendants simultaneously move to dismiss overlapping tort or statutory claims. *See Amerigas Propane, L.P. v. BP Am., Inc.*, 691 F. Supp. 2d 844, 854 (N.D. Ill. 2010). Contrary to Amazon's argument, unjust enrichment requires only that Amazon unjustly retained a benefit at Plaintiff's expense, in a manner that violates principles of justice, equity, and good conscience. *See Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011). That standard is plainly met here. Moreover, the unjustness of the retention of this benefit to the detriment of Plaintiff and the Class stands alone, regardless of the success of Plaintiff's other claims. Plaintiff and others had UPT points assigned to them during a period of time in which, they were promised, those points would not be assigned. Plaintiff alleges that Amazon was "unjustly enriched

by at least the amount that each unpaid day off assessed against Plaintiff and each member of the Classes would have cost Amazon, had Plaintiff and the Classes been able to utilize them" and the "cost of creating and maintaining a compliant attendance and leave system for the hundreds of thousands of people [Amazon] employs across the nation." Dkt. 21, ¶¶ 8, 150. The cost of leave and accommodation processing can add hundreds of thousands of dollars to large businesses and could add millions to a company the size of Amazon. Nevertheless, that is, quite literally, the cost of doing business – Amazon's refusal to invest in compliance with legal requirements applicable to it is not a defense.

### E. Plaintiff's Class Claims Are Properly Pled for This Stage of the Proceedings and Plaintiff Is Entitled to Discovery On His Class Allegations.

Because Plaintiff's class claims are adequately plead, he is entitled to discovery and the opportunity to seek certification. It is well-established in the Seventh Circuit that the initial pleading stage is not the appropriate time for the court to assess class certification. "[A]t the pleadings stage, [proposed class action plaintiffs] only are required to allege that the requirements of [Rule 23] are met. They need not establish or prove that class certification is proper." *Perez v. City of Chicago*, Case No. 13-cv-4531, 2015 WL 5163165 at *5 (N.D. Ill. Sept. 2, 2015); *see also* Ex. A, *Mangar v. Amazon* Order, p. 13 (denying motion to strike class allegations, noting that it was "premature at this stage of the proceeding for the Court to address Amazon's arguments calling into question the viability of the purported class") (citing *Durso v. Samsung Electronics Am., Inc.,* No. 12-5352, 2013 WL 5947005, at *3 ("Generally courts do not consider whether a proposed class meets [Rule] 23 class requirements until after plaintiffs move for class certification") (citations omitted)). "[T]he prevailing view in this district[ is that a] plaintiff who personally suffered an injury in fact has standing. Whether that person can represent a nationwide class is a class-certification problem, not a standing problem." *Slowinski v. BlueTriton Brands, Inc.*, 744 F. Supp. 3d 867, 880 (N.D. Ill. 2024).

Courts have also consistently held that **"**[n]othing in either the language or history of Rule 23 . . . gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981). "Furthermore, because the defendant is in control of the information needed for the class to establish that the requirements of Rule 23 are met, allowing discovery before addressing whether class certification is proper is appropriate." *Hughes v. Circle K Stores, Inc.,* No. 24-CV-1071, 2024 WL 4212338, at *5 (C.D. Ill. July 12, 2024). Whether there are individualized inquiries is a factor of the class definition. Given that Plaintiff has not moved for class certification, and the parties have not conducted discovery, the precise class that Plaintiff *may* move to certify is not yet known.

While Amazon claims that Plaintiff's class allegations should be dismissed *now*, at the pleading stage, Amazon was unable to point to any cases where a court did just that. In fact, despite labeling its headings to argue that the class mechanism is unavailable to Plaintiff, Amazon's Section F in its Response (Dkt. 28, pp. 16 – 22) does not include any case law or argument to support why the class mechanism is unavailable. Instead, Amazon merely rehashes the earlier Rule 8 arguments from the first 16 pages of its brief, discussing case law pertaining to class certification, summary judgment, and various other stages and requests other than dismissal, in nearly every District Court other than this one.

While these issues are typically not addressed until the certification phase, nevertheless, Plaintiff pled facts to suggest that he is similarly situated to putative class members and that they were all aggrieved by the same policies and practices of Amazon. Similar ADA pattern and practice and disparate impact class actions have been recognized as procedural mechanisms available in this context. *See See e.g. Bates v. UPS*, 204 F.R.D. 440, 447 (N.D. Cal. 2001) (certifying ADA pattern and practice discrimination case pursuant to Rules 23(a) and (b)(2); *Palmer v. Combined Ins. Co. of Am.*, 217 F.R.D.

430, 441 (N.D. Ill. 2003) (certifying Title VII pattern and practice claim, where the plaintiff alleged that a large employer engaged in systemic discrimination nationally). *EEOC v. Celadon Trucking Servs.*, No. 1:12-cv-00275, 2015 U.S. Dist. LEXIS 84639, at *14 (S.D. Ind. June 30, 2015) ("Section 107(a) of the ADA, 42 U.S.C. § 12117(a), provides a cause of action for pattern-or-practice claims, incorporating by reference Section 707 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-6.").

### F. Justice Requires That Plaintiff Be Granted Leave to Amend the FAC.

Even if the Court finds that certain claims require additional factual support, Plaintiff should be permitted leave to amend his Complaint. As a general matter, leave to amend a complaint should be freely given when justice requires. Fed. R. Civ. P. 15(a). Courts prohibit further amendments following dismissal of a complaint in limited circumstances, including when there is evidence of undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or if any such amendment would be futile. *Bethany Pharmacal Co. v. QVC, Inc.,* 241 F.3d 854, 861 (7th Cir. 2001). None of those factors are present here. Plaintiff has diligently prosecuted his and the Class Members' claims. This will be the Court's first and only ruling on a Motion to Dismiss in this case. Even if the Court finds any deficiencies with Plaintiff's pleadings, justice and equity require that Plaintiff be permitted leave to replead his claims to address any such deficiencies.

### G. The Court Should Disregard Amazon's Purported Attendance Policy or Convert Amazon's Motion to One for Summary Judgment.

The Court should disregard Amazon's purported Attendance Policy attached to its Motion to Dismiss or, alternatively, analyze Amazon's Motion as one for summary judgment. *See* Dkt. 28, Ex. A. Ordinarily, if a court considers "matters outside of the pleadings" in assessing a motion to dismiss, the "motion must be treated as one for summary judgment." Fed. R. Civ. P. 12(d). The exception to this Rule is that a court may consider documents that are (1) referenced in Plaintiff's Complaint; (2) central to Plaintiff's claim; and (3) authenticity of the document is not disputed. *Fin. Fiduciaries, LLC v. Gannett*

*Co., 46 F.4th 654, 663 (7th Cir. 2022).* Here, Plaintiff does not dispute that the policies at issue are central to his claims, but does dispute the authenticity of the document attached to Amazon's Motion to Dismiss. First, Amazon maintains various policies specific to divisions, departments, and or teams, which are likely changed frequently due to updates in the law and periodic review, among other reasons. In its Motion to Dismiss, Amazon attached a certain Attendance Policy, claiming it is the relevant policy at issue. In addition to this Attendance Policy, Amazon also has policies pertaining to individuals with disabilities, leaves, attendance points, and more, many of which are publicly available online. *See* Group Ex. B. This is particularly true given that Plaintiff's allegations include that Amazon's written policies were a sham. *See* Dkt. 21, ¶ 25 ("Amazon's policies are a sham, developed to induce its employees to self-identify disabilities, rob their employees of paid time off, and retain for their own benefit any funds that would be expended on the continued employment of their leave taking employees, to the detriment of those employees"). The Policy attached to Amazon's Motion is also dated May 2023 (Dkt. 28, Ex. A), and Plaintiff's termination occurred over a year later, on June 5, 2024. Dkt. 21, ¶ 59. Plaintiff should be permitted to obtain discovery regarding Amazon's policies, including those which were in place during the relevant time period, how they were enforced, and by whom they were enforced, before the Court makes any judgments in reliance on what Amazon attached to its moving papers.

WHEREFORE, Plaintiff Robert Gillard respectfully requests that the Court deny Amazon's Motion to Dismiss (Dkt. 28) in its entirety and order Amazon to answer Plaintiff's First Amended Complaint within fourteen (14) days.[5]

---

[5] Plaintiff's claim has been pending since January 27, 2025. From Plaintiff's perspective, time is of the essence in moving the case along to discovery.

Dated: July 29, 2025

Respectfully submitted,

**ROBERT GILLARD, on behalf of himself and others similarly situated**

By:     */s/ Laura Luisi*

Laura Luisi
Jamie Holz
**LUISI HOLZ LAW**
LuisiL@luisiholzlaw.com
HolzJ@luisiholzlaw.com
77 W. Wacker Dr., Suite 4500
Chicago, Illinois 60601
Tel: (312) 639-4478

*Attorneys for Plaintiff and Putative Class*

## CERTIFICATE OF SERVICE

I, Laura Luisi, an attorney, certify that on July 29, 2025, a true and correct copy of the foregoing Plaintiff's Response in opposition to Defendant's Motion to Dismiss was served electronically through the Northern District of Illinois CM/ECF electronic filing on all counsel of record.

*/s/ Laura Luisi*
Laura Luisi
LuisiL@luisiholzlaw.com
Tel: (312) 639-4478

*Attorney for Plaintiff and Putative Class*

22